1  MARK T. JANSEN (SBN 114896)
   mjansen@crowell.com
2  JANINE L. SCANCARELLI (SBN 197202)
   jscancarelli@crowell.com
3  JACOB Z. ZAMBRZYCKI (SBN 289682)
   jzambrzycki@crowell.com
4  CROWELL & MORING LLP
   275 Battery Street, 23rd Floor
5  San Francisco, CA  94111
   Telephone: (415) 986-2800
6  Facsimile: (415) 986-2827

7  Attorneys for Defendant
   ARIADNE CAPITAL LIMITED                    **PUBLIC REDACTED**
8                                             **VERSION**

9  MARK A. FINKELSTEIN (SBN 173851)
   mafinkelstein@jonesday.com
   LUCY J. WHEATLEY (*pro hac vice*)
10 lwheatley@jonesday.com
   JONES DAY
11 3161 Michelson Drive, Suite 800
   Irvine, CA  92612
12 Telephone:   (949) 851-3939
   Facsimile:   (949) 553-7539
13
   Attorneys for Plaintiff
14 ENTREPRENEUR MEDIA, INC.

15              UNITED STATES DISTRICT COURT

16              CENTRAL DISTRICT OF CALIFORNIA

17

18 ENTREPRENEUR MEDIA, INC., a          Case No. 8:12-cv-02168-CJC-AN
   California Corporation,
19                                       **JOINT STIPULATION ON MOTION**
                Plaintiff,               **OF DEFENDANT ARIADNE**
20                                       **CAPITAL LIMITED TO COMPEL**
        v.                               **PLAINTIFF ENTREPRENEUR**
21                                       **MEDIA, INC. TO PRODUCE**
   ARIADNE CAPITAL LIMITED, a            **DOCUMENTS RESPONSIVE TO**
22 U.K. company and                      **ARIADNE'S FIRST SET OF**
   ENTREPRENEUR COUNTRY, an              **DISCOVERY REQUESTS**
23 unknown entity,
                                         Hearing Date: July 17, 2014
24              Defendants.              Time: 10:00 a.m.
25                                       Place: Courtroom 6B
                                         Judge: Magistrate Judge Nakazato
26                                       Discovery Cutoff: Aug. 1, 2014
27                                       Pre-trial Conf.: Nov. 3, 2014
28                                       Trial: Nov. 18, 2014

# TABLE OF CONTENTS

**Page**

I.  Ariadne's Introduction ................................................................................... 1

II. EMI's Introduction ........................................................................................ 4

III. Disputed Discovery ....................................................................................... 7

    A. Request for Production Nos. 7, 10-12, 14, 29 and Interrogatory No. 23 ...................................................................................................... 7

        1. Ariadne's Position ................................................................ 10

        2. EMI's Position ...................................................................... 13

    B. Request for Production Nos. 22-26 ................................................... 17

        1. Ariadne's Position ................................................................ 19

        2. EMI's Position ...................................................................... 22

    C. Request for Production Nos. 28 and 30 ............................................. 25

        1. Ariadne's Position ................................................................ 26

        2. EMI's Position ...................................................................... 27

    D. Request for Production No. 8 ............................................................ 28

        1. Ariadne's Position ................................................................ 29

        2. EMI's Position ...................................................................... 29

    E. Request for Production Nos. 20, 33, 34 ............................................. 31

        1. Ariadne's Position ................................................................ 32

        2. EMI's Position ...................................................................... 33

    F. Request for Production Nos. 1, 3, 5, 13, 15-19, 27, 31-32, 35-39 and Interrogatory Nos. 4 and 5 ....................................................... 35

        1. Ariadne's Position ................................................................ 43

        2. EMI's Position ...................................................................... 45

IV. Ariadne's Conclusion ................................................................................. 50

V.  EMI's Conclusion ....................................................................................... 50

CROWELL
& MORING LLP
ATTORNEYS AT LAW

PUBLIC REDACTED VERSION    -i-

JOINT STIPULATION ON ARIADNE'S MOTION TO
COMPEL EMI TO PRODUCE DOCUMENTS;
CASE NO. 8:12-cv-02168-CJC-AN

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.    Ariadne's Introduction

Defendant Ariadne Capital Limited ("Ariadne") is a London-based company with no U.S. operations, whose business is to connect digital start-up companies in the U.K., Europe and in other foreign countries with larger companies that might be interested in partnering with or investing in the start-ups.  Ariadne runs a website called enterpreneurcountry.com, runs entrepreneurship forums in London, and sends out free informational e-mail digests to persons who previously signed up on the entrepreneurcountry.com website.

Plaintiff Entrepreneur Media, Inc. instituted this action against Ariadne in December 2012, asserting various causes of action related to Plaintiff's weak Entrepreneur trademark.  *See Entrepreneur Media, Inc. v. Smith*, 279 F.2d 1135, 1143 (9th Cir. 2002) (holding that "the need of others in the marketplace to use the term 'entrepreneur' to describe their goods or services confirms that [Plaintiff]'s mark is descriptive").  More than a year-and-a-half later, Plaintiff has failed to provide any meaningful production of documents in response to Ariadne's discovery requests—which were served on December 30, 2013 and go directly to any likelihood of confusion—and continues in its refusal to do so.  **To date, Plaintiff's entire production has consisted of approximately 250 cherry-picked documents**.  *See infra*, Section III.F.1.  Plaintiff's failure to provide any meaningful discovery is especially troubling considering that it has frequently litigated the alleged infringement of its Entrepreneur mark in the past and should have the requested information at the ready, either in its offices or its attorneys' litigation files.  Indeed, as the plaintiff, it should have been prepared to produce material relevant to its allegations at the outset of the case, but has not done so.

Instead, since early April, Plaintiff has effectively strung Ariadne along through settlement discussions and reassurances that it would supplement its production in an apparent effort to run out the clock on the discovery deadline.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

PUBLIC REDACTED VERSION          -1-

JOINT STIPULATION ON ARIADNE'S MOTION TO
COMPEL EMI TO PRODUCE DOCUMENTS;
CASE NO. 8:12-cv-02168-CJC-AN

Ariadne first wrote to Plaintiff regarding its document production deficiencies on April 3, at which point Plaintiff had produced a paltry eight documents, despite having agreed to produce documents responsive to at least Ariadne's Document Request Nos. 1, 3, 5, 13, 15-19, 27, 31-32, 35-39, and in connection with Interrogatory Nos. 4 and 5.  These Requests and Interrogatories broadly encompass business plans, market research, polls, studies, evidence of confusion, evidence of damages, invoices, sales information, trademark enforcement and licensing, marketing expenditures, customer information, marketing plans, and related communications.  Plaintiff assured Ariadne on April 14 that it would make a substantial production by the end of that week, only to then produce a mere 16 additional documents two days later, largely consisting of Internet screenshots taken the week before.  Ariadne again contacted Plaintiff on April 21 to address the obvious inadequacies with its production.  On April 28, Plaintiff produced another 230 documents, barely addressing Ariadne's requests.  Zambrzycki Decl. ¶¶3-8.

On May 6, 2014, Ariadne requested a meet-and-confer about the continuing deficiencies with the production Plaintiff agreed to, as well as the numerous categories of documents which Plaintiff has flatly refused to produce even though such documents go to the heart of its claims and Ariadne's defenses.  *Id.* ¶9.[1]  In terms of the latter, Plaintiff has refused to produce documents related to third parties' use of the Entrepreneur mark, including studies, surveys, expert reports, market research, focus groups and the like regarding its Entrepreneur mark, third party use of the term "entrepreneur," the likelihood of confusion between such marks, and any documents relating to any purported secondary meaning or acquired distinctiveness of the term "entrepreneur" (Request Nos. 7, 10-12, 14, 29 and

---

[1] Plaintiff complains that Ariadne has not complied with L.R. 37-1.  But Ariadne sent Plaintiff a detailed, nine-page letter identifying the numerous deficiencies with its production described herein and the applicable Federal Rules of Civil Procedure in view of which Plaintiffs' deficiencies were clear.  The burden shifted to Plaintiff to explain why the discovery is inappropriate, which it has not done.  *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal. 1998).

CROWELL
& MORING LLP
ATTORNEYS AT LAW

PUBLIC REDACTED VERSION          -2-          JOINT STIPULATION ON ARIADNE'S MOTION TO
COMPEL EMI TO PRODUCE DOCUMENTS;
CASE NO. 8:12-cv-02168-CJC-AN

Interrogatory No. 23).  Such documents are relevant to any alleged likelihood of confusion.  Plaintiff has likewise refused to produce documents relating to its past enforcement of the Entrepreneur mark, including communications with perceived infringers, filings and documents from legal proceedings, including expert reports, declarations, and testimony, testimony from Plaintiff's officers, employees, and agents, and relevant discovery and the complete record from any civil action or administrative proceeding related to its Entrepreneur and related marks (Request Nos. 22-26).  These documents are also relevant to any likelihood of confusion.

Plaintiff has also refused to produce documents sufficient to show its revenues, expenditures, and any net profits or losses associated with the domestic and foreign promotion or provision of products or services under its Entrepreneur mark, despite the domestic documents' relevance to damages and to the strength of Plaintiff's Entrepreneur mark, and despite having put the foreign documents at issue through the allegations in its Complaint (Nos. 28 and 30).  Plaintiff also refuses to produce its domestic trademark clearance searches for marks containing the term "entrepreneur" (No. 8) even though they are relevant to Ariadne's defense that Plaintiff's mark is descriptive and only entitled to limited, if any, protection, or its foreign trademark searches (*id.*), which Plaintiff put at issue in its Complaint. Plaintiff also unreasonably objects to producing documents that pertain to the facts and allegations contained in the pleadings, or that it intends to rely upon in this proceeding (Nos. 20 and 33), even though such documents encompass the very definition of permitted discovery.  Finally, although Plaintiff asserts that it has "policies to retain documents in compliance with applicable state and federal laws pertaining to particular classes of documents," it refuses to produce those policies (No. 34), which are relevant in view of the deficiencies with Plaintiff's production.

Having failed to resolve the above disagreements during a May 20-21 meet-and-confer (Zambrzycki Decl., ¶10), Ariadne moves to compel Plaintiff to provide the requested discovery.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

PUBLIC REDACTED VERSION          -3-          JOINT STIPULATION ON ARIADNE'S MOTION TO
COMPEL EMI TO PRODUCE DOCUMENTS;
CASE NO. 8:12-cv-02168-CJC-AN

## II.    EMI's Introduction

Ariadne's discovery requests are overbroad, unreasonable, violate Rule 34, and amount to nothing more than a sweeping fishing expedition.  Without complying with Local Rule 37, and on the eve of the discovery cut-off date, Ariadne has demanded that EMI produce virtually every document in EMI's or its predecessors' possession for its entire thirty-year history.  Indeed, even though Ariadne first began using its trademark no earlier than 2008 (and claims to have first thought of the term no earlier than 2006), it nevertheless seeks documents from EMI dating back to 1978, and includes broad "catch-all" requests such as:

- All documents related to any facts, allegations, denials or affirmative defenses in the Complaint, as filed on December 14, 2012, or in Ariadne's Answer to the Complaint, as filed on March 21, 2013; and

- All documents relating to any secondary meaning or acquired distinctiveness of the term "entrepreneur"

Not content with seeking every document "related to" any fact, allegation, or defense in the operative pleadings, Ariadne also demands that EMI produce virtually every pleading, motion, discovery request, document produced, interrogatory answer, admission, expert report, survey, declaration, item of correspondence, trial transcript, deposition transcript, court order, etc. in every litigation, T.T.A.B. proceeding, administrative action, exchange of correspondence, and internal enforcement analysis involving the Entrepreneur® mark that EMI has been involved in at any point since 1978.  Ariadne's only explanation as to the relevance of every document in every dispute going back 30 years is that such documents may relate to "likelihood of confusion."

While a portion of the documents from unrelated lawsuits certainly relate to likelihood of confusion *with a third party mark*, most of these documents do not meet that standard, and none of these documents relate to likelihood of confusion with the Entrepreneur Country mark.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

PUBLIC REDACTED VERSION          -4-          JOINT STIPULATION ON ARIADNE'S MOTION TO
COMPEL EMI TO PRODUCE DOCUMENTS;
CASE NO. 8:12-cv-02168-CJC-AN

In addition to requesting virtually every document EMI possesses, Ariadne also seeks to compel EMI to donate its legal analysis. Ariadne demands that EMI produce all documents that "relate or refer to any third party's use of the Entrepreneur Mark or any variation thereof" for the past thirty years, all documents on which EMI intends to rely at the time of trial, all documents which show "secondary meaning" for the past thirty years, all documents relating to any claim in the Complaint, and all documents relating to or reflecting "enforcement" of the Entrepreneur® mark for the past thirty years. All of these requests require an attorney to perform a legal analysis in order to select and assemble documents, and any such assembly would instantly reveal protected work-product.

To be sure, Ariadne has not produced a single example of third party use of the Entrepreneur® mark, despite claiming that such evidence is part of its defenses. Instead, Ariadne apparently intends to require EMI and its attorneys to undertake that task, even though relevant third party uses are, by definition, uses that achieve recognition by the public and are fully available to Ariadne.

Despite waiting months to file this motion to compel, Ariadne cites almost no authority that supports compelling production in response to Ariadne's requests. Rather than discuss the substance of its requests (which are often wildly overbroad on their face), Ariadne attempts to ascribe nefarious motives to EMI without a shred of evidence, accusing EMI of stringing Ariadne along and "cherry-picking" documents. The facts do not support these accusations.

EMI served discovery requests on Ariadne on October 1, 2013 and gave Ariadne several extensions to respond, amounting to over 75 days, such that the responses were not served until January 15, 2014. Declaration of Lucy Jewett Wheatley (attached hereto) ¶ 2. Ariadne did not produce any documents until February 14, 2014, despite having agreed in writing to produce documents on January 15, 2014. *Id.* ¶¶ 2-3. Ariadne refused to produce *any* documents relating to its goods, services, or revenues until EMI met and conferred with Ariadne under

CROWELL
& MORING LLP
ATTORNEYS AT LAW

PUBLIC REDACTED VERSION        -5-

JOINT STIPULATION ON ARIADNE'S MOTION TO
COMPEL EMI TO PRODUCE DOCUMENTS;
CASE NO. 8:12-cv-02168-CJC-AN

1   L.R. 37-1, and served a joint stipulation on March 19, 2014. *Id.* ¶ 3.

2        Ariadne makes much of the number of documents EMI produced—

3   essentially arguing that, by only producing "approximately 250 documents," EMI

4   must have engaged in bad practices.  Ariadne neglects to mention that, in total, it

5   has only produced *approximately 125 documents*, or one-half of the number of

6   documents that EMI has produced.

7        While EMI has been diligently prosecuting this case, Ariadne opted not to

8   serve any discovery requests until December 30, 2013, nearly three months after

9   EMI served its written discovery requests.  In responding to Ariadne's discovery

10   requests, EMI provided responses to Ariadne's Interrogatories and Requests for

11   Production on the agreed deadline, and then provided Ariadne with a rolling

12   production, producing documents as they were located and assembled.  This is a

13   common practice, not an attempt to "string Ariadne along."

14        For the present dispute, Ariadne failed to cite any authority in support of its

15   position in its meet and confer letter, in violation of Local Rule 37-1.  EMI still

16   participated in meet and confers on May 20 and 21, 2014, during which EMI

17   offered several compromises to attempt to resolve the dispute without motions

18   practice.  In violation of L.R. 37-2.1, Ariadne has not included "how it proposed to

19   resolve the dispute over [each] issue at the conference of counsel," likely because

20   Ariadne refused to compromise on most of its unreasonable requests.  EMI also

21   sent Ariadne a letter detailing its position, and citing relevant authority on May 23,

22   2014, attached as Exhibit B to the Wheatley Declaration.  Ariadne did not respond

23   to this letter, and waited a full month before serving EMI with the present Rule 37

24   joint stipulation.  Given Ariadne's prior delays in responding to EMI's discovery

25   requests, and its current delays in connection with this motion, Ariadne cannot

26   complain that EMI has delayed proceedings or tried to "run out the clock."  Instead,

27   Ariadne served improper requests and now has decided, at the end of discovery and

28   after its motion to dismiss was recently denied, to attempt to enforce those requests.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

PUBLIC REDACTED VERSION     -6-     JOINT STIPULATION ON ARIADNE'S MOTION TO
COMPEL EMI TO PRODUCE DOCUMENTS;
CASE NO. 8:12-cv-02168-CJC-AN

**III.    Disputed Discovery**

    **A.    Request for Production Nos. 7, 10-12, 14, 29 and Interrogatory No. 23**

**Request for Production No. 7**

All documents relating to any studies, evaluations, surveys, expert reports, market research, focus groups, investigations, polls or other evaluations conducted or being conducted regarding the Entrepreneur Mark or any variation thereof.

**Objection to Request for Production 7**

EMI incorporates by reference each of its General Objections as though fully set forth herein. EMI objects to this request on the ground that it seeks information protected by the attorney-client privilege and the work product doctrine. EMI objects to this request as vague, not relevant, overbroad and unduly burdensome to the extent it seeks "all" documents, and not reasonably calculated to lead to the discovery of admissible evidence. EMI objects to this request to the extent it seeks expert disclosures prior to the expert closure deadline. Subject to and without waiving its objections, to the extent such documents exist, EMI will produce any non-privileged expert reports in this case in accordance with the Federal Rules.

**Request for Production No. 10**

All documents relating to any studies, evaluations, or surveys conducted or being conducted regarding use by others of the term "entrepreneur" or any variation thereof in connection with the promotion, advertising, or sale of any products or services, anywhere in the world.

**Objection to Request for Production 10**

EMI incorporates by reference each of its General Objections as though fully set forth herein. EMI objects to this request on the ground that it seeks information protected by the attorney-client privilege and the work product doctrine. EMI objects to this request as vague, not relevant, overbroad and unduly burdensome to the extent it seeks "all" documents, and not reasonably calculated to lead to the

CROWELL
& MORING LLP
ATTORNEYS AT LAW

PUBLIC REDACTED VERSION        -7-        JOINT STIPULATION ON ARIADNE'S MOTION TO
COMPEL EMI TO PRODUCE DOCUMENTS;
CASE NO. 8:12-cv-02168-CJC-AN

discovery of admissible evidence.  EMI objects to this request to the extent it seeks expert disclosures prior to the expert closure deadline.  Subject to and without waiving its objections, to the extent such documents exist, EMI will produce any non-privileged expert reports in this case in accordance with the Federal Rules.

### Request for Production No. 11

All documents relating to any studies, evaluations or surveys conducted or being conducted regarding consumer recognition of, or association with, the term "entrepreneur" or any variation thereof.

### Objection to Request for Production 11

EMI incorporates by reference each of its General Objections as though fully set forth herein.  EMI objects to this request on the ground that it seeks information protected by the attorney-client privilege and the work product doctrine.  EMI objects to this request as vague, overbroad and unduly burdensome to the extent it seeks "all" documents, and not reasonably calculated to lead to the discovery of admissible evidence.  EMI objects to this request to the extent it seeks expert disclosures prior to the expert closure deadline.  Subject to and without waiving its objections, to the extent such documents exist, EMI will produce any non-privileged expert reports in this case in accordance with the Federal Rules.

### Request for Production No. 12

All documents relating to any studies, evaluations or surveys conducted or being conducted regarding the likelihood of confusion of the Entrepreneur Mark or any variation thereof with any other designation, trademark, service mark, or trade name.

### Objection to Request for Production 12

EMI incorporates by reference each of its General Objections as though fully set forth herein.  EMI objects to this request on the ground that it seeks information protected by the attorney-client privilege and the work product doctrine.  EMI objects to this request as vague, not relevant, overbroad and unduly burdensome to

CROWELL & MORING LLP
ATTORNEYS AT LAW

PUBLIC REDACTED VERSION      -8-      JOINT STIPULATION ON ARIADNE'S MOTION TO COMPEL EMI TO PRODUCE DOCUMENTS; CASE NO. 8:12-cv-02168-CJC-AN

1   the extent it seeks "all" documents, and not reasonably calculated to lead to the

2   discovery of admissible evidence.  EMI objects to this request to the extent it seeks

3   expert disclosures prior to the expert closure deadline.  Subject to and without

4   waiving its objections, to the extent such documents exist, EMI will produce any

5   surveys and expert reports in this case in accordance with the Federal Rules.

6       **Request for Production No. 14**

7       All documents relating to any secondary meaning or acquired distinctiveness

8   of the term "entrepreneur" or any variation thereof.

9       **Objection to Request for Production 14**

10      EMI incorporates by reference each of its General Objections as though fully

11  set forth herein.  EMI objects to this request on the ground that it seeks information

12  protected by the attorney-client privilege and the work product doctrine.  EMI

13  objects to this request on the ground that it seeks every magazine, book, and other

14  use, of ENTREPRENEUR, by EMI.  Thus, it is unintelligible and overbroad as

15  drafted.  Subject to and without waiving its objections, EMI will produce its U.S.

16  trademark registrations for marks containing the term "entrepreneur," and produce

17  any surveys and expert reports in this case in accordance with the Federal Rules.

18      **Request for Production No. 29**

19      All documents that relate or refer to any third party's use of the Entrepreneur

20  Mark or any variation thereof.

21      **Objection to Request for Production 29**

22      EMI incorporates by reference each of its General Objections as though fully

23  set forth herein.  EMI objects to this request on the ground that it seeks information

24  protected by the attorney-client privilege and the work product doctrine.  EMI

25  objects to this request as vague as to "relate or refer" and "any variation thereof,"

26  overbroad and unduly burdensome, and not reasonably calculated to lead to the

27  discovery of admissible evidence.  Subject to and without waiving its objections, to

28  the extent such documents exist, EMI will produce any non-privileged surveys and

CROWELL
& MORING LLP
ATTORNEYS AT LAW

PUBLIC REDACTED VERSION          -9-          JOINT STIPULATION ON ARIADNE'S MOTION TO
COMPEL EMI TO PRODUCE DOCUMENTS;
CASE NO. 8:12-cv-02168-CJC-AN

1    expert reports in this case in accordance with the Federal Rules.

2    **Interrogatory No. 23**

3    Identify all expert reports, market studies, focus groups, surveys, reports,

4    clearance reports, investigations, polls, or other evaluations obtained, made, or

5    conducted by, on behalf of, or for the benefit of EMI, its agents, or third parties that

6    refer or relate to the Entrepreneur Mark or any variation thereof.

7    **Response to Interrogatory No. 23**

8    EMI incorporates by reference each of its General Objections as though fully

9    set forth herein.  EMI objects to this interrogatory on the ground that it seeks

10   information protected by the attorney-client privilege and the work product

11   doctrine.  EMI objects to this request as compound, vague, not relevant, overbroad

12   and unduly burdensome to the extent it seeks to identify "all" documents, and not

13   reasonably calculated to lead to the discovery of admissible evidence.  EMI objects

14   to this interrogatory as compound. EMI objects to this request to the extent it seeks

15   expert disclosures prior to the expert closure deadline.  Subject to and without

16   waiving its objections, to the extent such documents exist, EMI will produce any

17   surveys and expert reports in this case in accordance with the Federal Rules.

18   **1.    Ariadne's Position**

19   The discovery sought in these Requests and Interrogatory includes any

20   communications, studies, evaluations, surveys, expert reports, market research,

21   focus groups, investigations, polls or other evaluations conducted or being

22   conducted regarding:

23   - the Entrepreneur mark or any variation thereof (Request No. 7,

24     Interrogatory No. 23);

25   - use by others of the term "entrepreneur" or any variation thereof in

26     connection with the promotion, advertising, or sale of any products or

27     services (Request No. 10);

28   - consumer recognition of, or association with, the term "entrepreneur"

CROWELL
& MORING LLP
ATTORNEYS AT LAW

PUBLIC REDACTED VERSION        -10-        JOINT STIPULATION ON ARIADNE'S MOTION TO
COMPEL EMI TO PRODUCE DOCUMENTS;
CASE NO. 8:12-cv-02168-CJC-AN

or any variation thereof (Request No. 11);

- the likelihood of confusion of the Entrepreneur mark or any variation thereof with any other designation, trademark, service mark, or trade name (Request No. 12);

- any secondary meaning or acquired distinctiveness of the term "entrepreneur" or any variation thereof (Request No. 14); and

- any third party's use of the Entrepreneur mark or any variation thereof (Request No. 29).

These requests are plainly relevant to the factors underlying a likelihood of confusion determination between Plaintiff's mark and Ariadne's mark, which incorporates the term "entrepreneur." *See Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1198 (9th Cir. 2012) (identifying, *inter alia*, the differences of the goods and services involved; the respective marketing channels; the weakness of Plaintiff's mark; the lack of actual confusion by customers; the degree of care likely to be exercised by the consumer; and the unlikelihood of expansion of the product lines as factors used in determining whether confusion is likely); *e.g.*, *Frehling Enters. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1336 (11th Cir. 1999) ("Also important in gauging the strength of a mark is the degree to which third parties make use of the mark.").

Plaintiff's response that it will only produce "any surveys and expert reports *in this case* in accordance with the Federal Rules" is insufficient. Simply because surveys, studies, evaluations, market research, or the like were not prepared for the purposes of *this* litigation but were instead previously prepared, prepared in connection with other litigations, or prepared in the ordinary course of business, does not make them irrelevant. Regardless of the circumstances in which they were created, any non-privileged surveys, evaluations, market research and the like regarding Plaintiff's Entrepreneur mark are relevant to the likelihood of confusion factors enumerated above. *See Rearden*, 683 F.3d at 1198. Similarly, because

1  Plaintiff's mark is merely "descriptive" and "others in the marketplace [need] to use

2  the term 'entrepreneur' to describe their goods or services," *Entrepreneur Media*,

3  279 F.2d at 1143, any prior surveys, evaluations, research and the like concerning

4  other marks using the term "entrepreneur" are likewise relevant to the likelihood of

5  confusion analysis between Plaintiff's Entrepreneur mark and Ariadne's mark,

6  which uses the term "entrepreneur."  Plaintiff has offered no authority to indicate

7  that discovery into such matters should not be permitted, despite it being Plaintiff's

8  burden to do so.  *Oakes*, 179 F.R.D. at 283.

9      Instead, Plaintiff has offered the self-serving "compromise" that it would

10  produce disclosed expert reports *produced by or on Plaintiff's behalf* relating to its

11  Entrepreneur mark, dating back to 2006.  But Ariadne's requests are not limited

12  only to expert reports, much less self-serving ones that were produced by Plaintiff

13  or on its behalf.  Nor should Plaintiff be permitted to limit its production to 2006, as

14  documents predating that year are relevant to demonstrating, *inter alia*, that

15  Plaintiff's mark has become weaker over time; the lack of actual confusion by

16  customers between Plaintiff's mark and other marks utilizing the term

17  "entrepreneur" throughout the entire time Plaintiff's mark has been registered; and

18  the unlikelihood of Plaintiff's expansion of its product line into Ariadne's.  Because

19  they are relevant, Plaintiff should be required to produce all of the requested

20  documents that are within its possession, custody, or control responsive to these

21  Requests and Interrogatory.  Fed. R. Civ. P. 34.

22      Finally, Plaintiff has complained in correspondence to Ariadne that these

23  Requests "would likely implicate numerous Protective Orders from unrelated

24  lawsuits."  As an initial matter, Plaintiff did not raise this objection in its responses

25  to Request Nos. 7, 10-12, 14, 29 or Interrogatory No. 23 and it is therefore waived.

26  *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir.

27  1992) ("It is well established that a failure to object to discovery requests within the

28  time required constitutes a waiver of any objection.").  Moreover, to the extent any

CROWELL
& MORING LLP
ATTORNEYS AT LAW

PUBLIC REDACTED VERSION      -12-

of the requested information is subject to a Protective Order, if it is Plaintiff's own information, there is nothing preventing Plaintiff from disclosing that information in this case.  If the requested information contains a third-party's protected information, Plaintiff could produce documents with the third-party's information redacted, thus addressing any purported confidentiality needs while satisfying its discovery obligations.  Plaintiff should also produce the corresponding Protective Order(s) purportedly at issue, rather than merely its say so as to the allegedly confidential nature of certain information.

### 2.     EMI's Position

Requests 7, 10, 11, 12, and 23

EMI as already produced market research relating to Entrepreneur Magazine, as requested by Requests 7 and 11.  *See* Wheatley Decl. ¶ 9.  The remaining requests by Ariadne listed above are overbroad and seek documents that are not relevant and not reasonably calculated to lead to admissible evidence.  While Ariadne denigrates EMI's requested compromises, tellingly Ariadne does not "state how it proposed to resolve the dispute," as required by Local Rule 37-2.1.

Requests 7, 10, 11, 12, and 23 seem to request any expert reports from past litigations or any other proceeding.  These requests are unlimited as to the time period, and Ariadne's counsel stated that the relevant time period dates back to the creation of the Entrepreneur® mark, *over thirty years ago*.  Ariadne has made no showing that any expert reports from past litigations would be relevant to the present dispute, nor can it—likelihood of confusion is a fact intensive case-by-case determination, such that past evaluations of a mark are not relevant.  *Paul Sachs Originals Co. v. Sachs*, 325 F.2d 212, 214 (9th Cir. 1963) ("In determining likelihood of confusion, examination of prior cases is not very helpful except insofar as they indicate factors to be considered. . . . . each case must stand on its own facts. ").  Any past surveys would relate to the goods and services offered by EMI or another party at that time, would pertain to the particular trademarks at

CROWELL
& MORING LLP
ATTORNEYS AT LAW

PUBLIC REDACTED VERSION      -13-

JOINT STIPULATION ON ARIADNE'S MOTION TO
COMPEL EMI TO PRODUCE DOCUMENTS;
CASE NO. 8:12-cv-02168-CJC-AN

1    issue, and would reflect consumer opinions at that particular time, variable factors

2    that would render the results meaningless, and certainly inadmissible. *See*

3    Reference Manual on Scientific Evidence, 240-41 (Federal Judicial Center 2000)

4    (noting that "[t]he definition of the relevant population is crucial because there may

5    be systematic differences in the responses of members of the population and

6    nonmembers" [and] "[a] survey that provides information about a wholly irrelevant

7    universe of respondents is itself irrelevant."); *S.E.C. v. Retail Pro, Inc.*, No. 08-cv-

8    1620, 2011 U.S. Dist. LEXIS 111322, at *12 (S.D. Cal. Sept. 28, 2011) ("[The

9    expert's] opinion regarding a defendant's mental state or lack of fraud in an

10   unrelated case was not relevant or permissible."). To the extent any past reports or

11   surveys show third party use, past third party use is not relevant, and Ariadne has

12   equal access to evidence of current third party use.

13       Ariadne further claims that stale expert reports or surveys would be relevant

14   to likelihood of confusion. Any past reports or surveys, however, would only be

15   relevant to likelihood of confusion with respect to the marks at issue in those

16   particular proceedings at that time. EMI's rejected compromise to avoid burdening

17   this Court with unnecessary motion practice was to provide any of its surveys or

18   expert reports dating back to 2006—back to when Entrepreneur Country first came

19   into existence—even though such documents are not relevant to this case. While

20   old expert reports might allow Ariadne's counsel, or its retained expert, to use past

21   attorney and expert work product to guide their current strategy, a desire to free-

22   ride off of EMI's prior work product, and the work product of third-parties does not

23   constitute acceptable grounds for discovery. *FMC Corp. v. Vendo Co.*, 196 F.

24   Supp. 2d 1023, 1048 (E.D. Cal. 2002) ("There is a strong policy against permitting

25   a non-diligent party from free-riding off the opponent's industry and diligence.").

26       Nor does Ariadne's claim that Plaintiff's mark is descriptive support granting

27   the requested discovery. First, EMI's Entrepreneur® mark is incontestable, and

28   thus "descriptiveness" is not an available defense in this action. *Park 'N Fly v.*

CROWELL
& MORING LLP
ATTORNEYS AT LAW

PUBLIC REDACTED VERSION        -14-        JOINT STIPULATION ON ARIADNE'S MOTION TO
COMPEL EMI TO PRODUCE DOCUMENTS;
CASE NO. 8:12-cv-02168-CJC-AN

1    *Dollar Park & Fly*, Inc., 469 U.S. 189, 224 USPQ 327 (1985) (holding that that the

2    owner of a registered mark may rely on incontestability to enjoin infringement, and

3    that an incontestable registration, therefore, cannot be challenged on the ground that

4    the mark is merely descriptive).  Second, surveys from past years pertaining to *past*

5    third party use will not relate to whether the mark is *currently* descriptive.

6    Ariadne's utterly unsupported contention that "Plaintiff's marks have become

7    weaker over time" does not support discovery of old expert reports.

8    Requests 14 and 29

9         Requests 14 and 29 are vastly overbroad, request attorney work-product, and

10   do not request specific categories of documents as required by Rule 34.

11        Request 14 seeks: "All documents relating to any secondary meaning or

12   acquired distinctiveness of the term 'entrepreneur' or any variation thereof."  As

13   EMI explained in its response, this request encompasses every document in EMI's

14   possession that uses the Entrepreneur® mark, which amounts to essentially every

15   document in EMI's possession, going back over 30 years.  EMI cannot possibly

16   comply with such an unreasonable and unfocused request.  Indeed, this request

17   lacks the "reasonable particularity" required by the Federal Rules.  *See Taylor v.*

18   *O'Hanneson*, 2014 U.S. Dist. LEXIS 81269, at  *7 (E.D. Cal. June 13, 2014) ("The

19   test for reasonable particularity is whether the request places a party upon

20   'reasonable notice of what is called for and what is not.'") (citing *Bruggeman v.*

21   *Blagojevich*, 219 F.R.D. 430, 436 (N.D Ill. 2004)).

22        To the extent Ariadne expects EMI's in-house or outside counsel to pick

23   and choose documents that are the "best" evidence of secondary meaning or

24   acquired distinctiveness, this request is a clear invasion of work-product privilege.

25   Selecting which documents best reflect secondary meaning requires legal analysis,

26   and producing a subset of these documents would reveal that analysis.  *U.S. v. TRW,*

27   *Inc.*, 212 F.R.D. 554, 563 (C.D. Cal. 2003) ("Where the selection, organization, and

28   characterization of facts reveals the theories, opinions, or mental impressions of a

CROWELL
& MORING LLP
ATTORNEYS AT LAW

PUBLIC REDACTED VERSION        -15-        JOINT STIPULATION ON ARIADNE'S MOTION TO
COMPEL EMI TO PRODUCE DOCUMENTS;
CASE NO. 8:12-cv-02168-CJC-AN

1    party or the party's representative, that material qualifies as opinion work

2    product.") The relevance of this request is also unclear—it is incontestable that

3    EMI's Entrepreneur® mark has secondary meaning and is enforceable.

4         Request 29 is similarly problematic in requesting "all documents that relate

5    or refer to any third party's use of the Entrepreneur Mark or any variation thereof."

6    First, this request seeks documents that are not relevant.  The Ninth Circuit has held

7    that unrelated potential infringers are not relevant to a trademark infringement

8    claim.  *Eclipse Associates Ltd. v. Data Gen. Corp.*, 894 F.2d 1114, 1119 (9th Cir.

9    1990) ("Appellant also argued that the district court erred in excluding the

10   testimony of various third-party users of the mark ECLIPSE. EAL attempted to

11   introduce into evidence five deposition transcripts describing the use of the mark

12   ECLIPSE for goods unrelated to the computer field. Evidence of other unrelated

13   potential infringers is irrelevant to claims of trademark infringement and unfair

14   competition under federal law.").  Worse, to the extent that Ariadne seeks *past*

15   third-party use (going back 30 years), such evidence cannot possibly have any

16   bearing on current use or the current strength of EMI's mark.

17        In addition, responding to this request requires that EMI's attorneys evaluate

18   what constitutes a "third party use of the Entrepreneur Mark," as this is a legal

19   concept, not a specific category of documents that EMI can gather.  EMI's selection

20   of what constitutes a third party use will inevitably reveal the mental impressions of

21   EMI's attorneys.  *See TRW, Inc.*, 212 F.R.D. at 563.  If Ariadne wants examples of

22   third party uses that are accessible to and create an impression on the public,

23   Ariadne is perfectly capable of collecting its own evidence, to the extent it exists.

24   *Smith v. Wal-Mart Stores, Inc.*, 475 F. Supp. 2d 1318, 1323 (N.D. Ga. 2007)

25   (holding that defendant was equally well-positioned to collect examples of third-

26   party use as was the plaintiff).

27

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

PUBLIC REDACTED VERSION      -16-      JOINT STIPULATION ON ARIADNE'S MOTION TO
COMPEL EMI TO PRODUCE DOCUMENTS;
CASE NO. 8:12-cv-02168-CJC-AN

## B.     Request for Production Nos. 22-26

### Request for Production No. 22

All documents reflecting or relating to enforcement of the Entrepreneur Mark or any variation thereof, including but not limited to internal memoranda and other documents, enforcement demands and correspondence with perceived infringers, copies of any documents filed or served in legal proceedings, and all documents related to settlement of any infringement claims.

### Objection to Request for Production 22

EMI incorporates by reference each of its General Objections as though fully set forth herein.  EMI objects to this request on the ground that it seeks information protected by the attorney-client privilege and the work product doctrine.  EMI objects to this request as vague as to "enforcement," not relevant, overbroad and unduly burdensome to the extent it seeks "all" documents, and not reasonably calculated to lead to the discovery of admissible evidence.

### Request for Production No. 23

All expert reports, declarations, deposition and trial testimony provided by any experts retained by EMI in any civil action or trademark administrative proceeding concerning the Entrepreneur Mark or any variation thereof.

### Objection to Request for Production 23

EMI incorporates by reference each of its General Objections as though fully set forth herein.  EMI objects to this request on the ground that it seeks information protected by the attorney-client privilege and the work product doctrine.  EMI objects to this request as not relevant, overbroad and unduly burdensome to the extent it seeks "all" documents, and not reasonably calculated to lead to the discovery of admissible evidence.  EMI objects to this request to the extent it seeks documents covered by Protective Orders in other lawsuits.  EMI objects to this request to the extent it seeks expert disclosures prior to the expert closure deadline.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

PUBLIC REDACTED VERSION        -17-

JOINT STIPULATION ON ARIADNE'S MOTION TO
COMPEL EMI TO PRODUCE DOCUMENTS;
CASE NO. 8:12-cv-02168-CJC-AN

1   Subject to and without waiving its objections, to the extent such documents exist,

2   EMI will produce any non-privileged surveys and expert reports in this case in

3   accordance with the Federal Rules.

4   **Request for Production No. 24**

5       All deposition and trial testimony provided by EMI or any of its current or

6   former officers, directors, employees, agents, or managers in any way concerning

7   the Entrepreneur Mark or any variation thereof in any civil action or trademark

8   administrative proceeding.

9   **Objection to Request for Production 24**

10       EMI incorporates by reference each of its General Objections as though fully

11   set forth herein.  EMI objects to this request on the ground that it seeks information

12   protected by the attorney-client privilege and the work product doctrine.  EMI

13   objects to this request to the extent it seeks documents covered by Protective Orders

14   in other lawsuits.  EMI objects to this request as not relevant, overbroad and unduly

15   burdensome to the extent it seeks "all" documents, and not reasonably calculated to

16   lead to the discovery of admissible evidence.

17   **Request for Production No. 25**

18       The complete record, including all deposition and trial testimony and all

19   admitted exhibits, in any trademark action that EMI has brought concerning the

20   Entrepreneur Mark or any variation thereof, including but not limited to the trial

21   record in Entrepreneur Media, Inc. v. Scott Smith, d/b/a EntrepreneurPR.

22   **Objection to Request for Production 25**

23       EMI incorporates by reference each of its General Objections as though fully

24   set forth herein.  EMI objects to this request on the ground that it seeks information

25   protected by the attorney-client privilege and the work product doctrine.  EMI

26   objects to this request to the extent it seeks documents covered by Protective Orders

27   in other lawsuits.  EMI objects to this request as not relevant, overbroad and unduly

28   burdensome to the extent it seeks "all" documents, and not reasonably calculated to

CROWELL
& MORING LLP
ATTORNEYS AT LAW

PUBLIC REDACTED VERSION    -18-    JOINT STIPULATION ON ARIADNE'S MOTION TO
COMPEL EMI TO PRODUCE DOCUMENTS;
CASE NO. 8:12-cv-02168-CJC-AN

1   lead to the discovery of admissible evidence.

2   **<u>Request for Production No. 26</u>**

3       All written discovery responses and all documents provided  by any party in

4   discovery in the action entitled Entrepreneur Media, Inc. v. Scott Smith, d/b/a

5   EntrepreneurPR.

6   **<u>Objection to Request for Production 26</u>**

7       EMI incorporates by reference each of its General Objections as though fully

8   set forth herein.  EMI objects to this request to the extent it seeks documents

9   covered by Protective Orders in other lawsuits.  EMI objects to this request as not

10   relevant, overbroad and unduly burdensome to the extent it seeks "all" documents,

11   and not reasonably calculated to lead to the discovery of admissible evidence.

12       **1.    Ariadne's Position**

13       The discovery sought in these Requests includes:

14       • documents relating to Plaintiff's enforcement of the Entrepreneur

15           mark, including documents related  to settlement of any infringement

16           claims (Request No. 22);

17       • expert reports, declarations, deposition and trial testimony provided by

18           any experts retained by Plaintiff in any civil action or administrative

19           proceeding concerning the Entrepreneur mark or any variation thereof

20           (Request No. 23);

21       • deposition and trial testimony provided by Plaintiff or any of its

22           current or former officers, directors, employees, agents, or managers in

23           any way concerning the Entrepreneur mark or any variation thereof in

24           any civil trademark action or administrative proceeding (Request No.

25           24);

26       • the complete record, including all deposition and trial testimony and

27           all admitted exhibits in any trademark action that Plaintiff has brought

28           concerning the Entrepreneur mark or any variation thereof, including

CROWELL
& MORING LLP
ATTORNEYS AT LAW

PUBLIC REDACTED VERSION    -19-

JOINT STIPULATION ON ARIADNE'S MOTION TO
COMPEL EMI TO PRODUCE DOCUMENTS;
CASE NO. 8:12-cv-02168-CJC-AN

but not limited to the trial record in *Entrepreneur Media, Inc. v. Scott Smith, d/b/a EntrepreneurPR* (Request No. 25); and

- all written discovery responses and documents provided by any party in discovery in *Entrepreneur Media, Inc. v. Scott Smith, d/b/a EntrepreneurPR* (Request No. 26).

Each of these Requests is plainly relevant to the instant matter as any trademark infringement litigation, enforcement proceeding, administrative proceeding, or settlement agreement involving Plaintiff's Entrepreneur mark and another party's mark containing the term "entrepreneur" will have involved many of the same issues disputed in this case. *See Rearden*, 683 F.3d at 1198 (identifying, *inter alia*, the differences of the goods and services involved; the respective marketing channels; the weakness of Plaintiff's mark; the lack of actual confusion by customers; the degree of care likely to be exercised by the consumer; and the unlikelihood of expansion of the product lines as factors used in determining whether confusion is likely); *see also Frehling*, 192 F.3d at 1336 ("Also important in gauging the strength of a mark is the degree to which third parties make use of the mark."). Notably, Plaintiff attached copies of decisions from the Central District of California and from the Ninth Circuit in the *Entrepreneur Media, Inc. v. Scott Smith, d/b/a EntrepreneurPR* case with its initial letter to Ariadne asserting trademark infringement, despite now claiming without merit that that action has no relevance here. Zambrzycki Decl., ¶16.

In particular, previous admissions from Plaintiffs' officers, directors, and the like regarding Plaintiff's Entrepreneur mark, others' use of the term "entrepreneur" in their marks, and any competition between Plaintiff's goods and services under its Entrepreneur mark and those of others under their marks containing the term "entrepreneur" will be highly relevant to the likelihood of confusion analysis between Plaintiff's Entrepreneur mark and Ariadne's mark, which also uses the term "entrepreneur." Ariadne expects that Plaintiff's officers and employees who

CROWELL
& MORING LLP
ATTORNEYS AT LAW

PUBLIC REDACTED VERSION    -20-

JOINT STIPULATION ON ARIADNE'S MOTION TO
COMPEL EMI TO PRODUCE DOCUMENTS;
CASE NO. 8:12-cv-02168-CJC-AN

testified in previous trademark actions on its behalf are likely to testify in this case; in addition, Ariadne needs their former testimony to prepare for their expected testimony in this case and to learn information relevant to the strength of Plaintiff's asserted Entrepreneur mark.

Again, Plaintiff has offered no authority to indicate that discovery into such matters—including into the very trademark that Plaintiff is presently asserting, or other accused marks containing the descriptive term "entrepreneur"—should not be permitted, despite it being Plaintiff's burden to do so. *Oakes*, 179 F.R.D. at 283. [2]

In correspondence with Ariadne, Plaintiff has additionally suggested that it need not produce any of the requested documents because "Ariadne can use the same means to find many of those documents that [Plaintiff] would use—going to Pacer or the relevant court's physical files." This objection is baseless as Plaintiff or its counsel presumably maintain records of their previous suits and proceedings and are obligated to produce responsive documents that are within their possession, custody, or control. Fed. R. Civ. P. 34. Plaintiff should be required to produce the full scope of discovery sought in these Requests.

Finally, as with Document Request Nos. 7, 10-12, 14, 29 and Interrogatory No. 23, Plaintiff again complains that Request Nos. 22-26 may implicate numerous Protective Orders from other lawsuits. But as stated with respect to those previous Requests and Interrogatory, Protective Orders should not prevent Plaintiff from disclosing its own allegedly protected information and any purportedly confidential third-party information can be redacted. Moreover, Plaintiff should be required to produce any Protective Order(s) purportedly at issue to establish the allegedly confidential nature of the information it seeks to withhold.

---

[2] In correspondence to Ariadne, Plaintiff has cited to three wholly-inapposite, non-trademark cases without any effort to explain how the irrelevant facts of those cases have any bearing on the instant dispute.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

PUBLIC REDACTED VERSION          -21-                JOINT STIPULATION ON ARIADNE'S MOTION TO
COMPEL EMI TO PRODUCE DOCUMENTS;
CASE NO. 8:12-cv-02168-CJC-AN

### 2.      EMI's Position

### <u>Ariadne's Request for Cloned Discovery is Irrelevant and Improper</u>

Ariadne's requests 23-26 demand that EMI produce virtually every document from every litigation over the past thirty years that involved the Entrepreneur® mark (which is, of course, EMI's primary brand).  Ariadne provides no explanation as to how these documents would be relevant except to assert they somehow relate to likelihood of confusion. However, likelihood of confusion is a case-by-case determination that is entirely dependent on the particular facts of each dispute. *Sachs*, 325 F.2d at 214. As discussed above, cases regarding a likelihood of confusion with other marks from thirty years ago have no possible bearing on the present dispute.  Such a production will entail EMI having to locate and produce a vast number of documents that are totally irrelevant.

When courts in this Circuit have considered such "cloned discovery" requests, they have found that such requests are improper.  For example, in *King County v. Merrill Lynch & Co.,* 2011 U.S. Dist. LEXIS 86775 (W.D. Wash., Aug. 5, 2011), a party requested all documents related to certain previous investigations and litigations related to a similar subject matter as was at issue in their proceeding. On a motion to compel, the court held: "discovery requests that seek duplicates of discovery produced in other litigation is improper as failing to make the requisite showing of relevance." *Id.* at *7. Citing other cases, the Court went on to note that such requests do not make the baseline showing of relevance required under the Federal Rules.  *Id.* at *7-*8.  Such requests are only relevant where the fact that certain documents were produced has a bearing on claims and defenses in the case. *Id.*  That is not the case here. The *King County* Court went on to find that it was insufficient that some of the documents, or even all of the documents, were likely to be relevant:

> Although some portion of documents encompassed by
> Plaintiffs' request may be relevant, the Court has no
> method of determining which of those documents are

CROWELL
& MORING LLP
ATTORNEYS AT LAW

PUBLIC REDACTED VERSION      -22-      JOINT STIPULATION ON ARIADNE'S MOTION TO
COMPEL EMI TO PRODUCE DOCUMENTS;
CASE NO. 8:12-cv-02168-CJC-AN

relevant, and which are not. It may very well be that each and every document produced in the government investigations is relevant to Plaintiff's claims. However, Plaintiff must make proper discovery requests, identifying the specific categories of documents sought, in order to obtain them -- and each category must be relevant to its claims and defenses.

*Id.* at *8.

With respect to documents that are publicly available on Pacer or from court archives, it is actually considerably less burdensome for Ariadne to obtain those documents than it is for EMI to do so. Ariadne can simply do a search on Pacer for EMI trademark cases, and then download all of the available documents, or (more likely) download the specific documents that Ariadne is particularly interested in reviewing. EMI however, must search its digital files and paper archives, and then direct its outside counsel to do the same. ████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ███████████████████████████████████████████████ ████████████████████████████████████████████████ ███████████████████████████████████████ Given that Ariadne has failed to make any showing that such documents are even relevant, the "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. 26(b)(2)(C). If Ariadne wishes to conduct a fishing expedition through old case files, it, and not EMI, should bear the cost of such an expedition.

Request 22, which encompasses all correspondence with alleged infringers, all internal memoranda, any other enforcement documents and all settlement agreements between EMI and third parties, also seeks non-relevant documents and is overbroad and unduly burdensome. These documents have no relevance to

CROWELL & MORING LLP
ATTORNEYS AT LAW

PUBLIC REDACTED VERSION          -23-          JOINT STIPULATION ON ARIADNE'S MOTION TO COMPEL EMI TO PRODUCE DOCUMENTS; CASE NO. 8:12-cv-02168-CJC-AN

EMI's or Ariadne's claims or defenses—the requests specifically seek documents related to potential or actual infringement by *third parties* dating back years.

To the extent Ariadne asserts that such documents are relevant to the subject matter of this lawsuit, *i.e.* the Entrepreneur® Mark, as the party seeking discovery beyond the claims and defenses in this case, Ariadne bears the burden to show good cause to compel production. Fed. R. Civ. P 26(b). Ariadne has not met this burden because the only information these enforcement documents could possibly provide is an insight into what companies EMI chooses to send letters to, which amounts to EMI's legal strategy and attorney mental impressions. Furthermore, settlement agreements and related correspondence are generally confidential, and would certainly not be admissible at trial, and would not lead to admissible evidence. Without a showing of good cause to compel the production of such documents, such requests are routinely denied. *See Therapeutic Research Faculty v. NBTY, Inc.*, 2006 U.S. Dist. LEXIS 89172, at *2-*5 (E.D. Cal. Nov. 20, 2006) (denying motion to compel "enforcement actions, including but not limited to lawsuits filed or contemplated, investigations, settlement agreements, and/or cease and desist actions, taken by Plaintiff' relating to the publications at issue in this action" where no showing was made that such documents were relevant); *see also Cook v. Yellow, Freight Sys., Inc.*, 132 F.R.D. 548, 554 (E.D. Cal. 1990) (denying motion to compel discovery of settlement-related documents), overruled on other grounds by *Jaffee v. Redmond*, 518 U.S. 1, 116 S. Ct. 1923 (1996).

With respect to Requests 25-26, which seek the complete record (including the trial record) and all discovery from *EMI v. Smith*, a case from *over ten years ago*, Ariadne has not identified any reasons why that case is relevant to the present proceeding.[3] Because the trial record and discovery from an entirely unrelated case

---

[3] The fact that EMI pointed out, in an initial cease and desist letter, that the Ninth Circuit ruled that EMI's mark is valid in the *Smith* case does not alter the analysis.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

PUBLIC REDACTED VERSION          -24-          JOINT STIPULATION ON ARIADNE'S MOTION TO
COMPEL EMI TO PRODUCE DOCUMENTS;
CASE NO. 8:12-cv-02168-CJC-AN

involving a third party is not relevant to any claim or defense at issue here, Ariadne bears the burden to show "good cause" for compelling production. Since Ariadne has not provided any explanation for this request, it has failed to meet that burden.

### C.    Request for Production Nos. 28 and 30

**Request for Production No. 28**

Documents sufficient to show, by year and country, the revenue and net profits (or losses) associated with the promotion, marketing, advertising, or provision of each and every product or service using the Entrepreneur Mark or any variation thereof, other than Entrepreneur Magazine.

**Objection to Request for Production 28**

EMI incorporates by reference each of its General Objections as though fully set forth herein.  EMI objects to this request as vague as to "the revenue and net profits (or losses) associated with the promotion, marketing, advertising, or provision of" and "any variation thereof," not relevant, overbroad and unduly burdensome to the extent it seeks documents sufficient to show "each and every product or service," and seeks documents outside of the United States, and not reasonably calculated to lead to the discovery of admissible evidence.

**Request for Production No. 30**

Documents sufficient to show EMI's advertising or promotional expenditures, by quarter or month, covering advertising or promotions that utilize the Entrepreneur Mark.

**Objection to Request for Production 30**

EMI incorporates by reference each of its General Objections as though fully set forth herein.  EMI objects to this request as vague as to "promotional" and "utilize the Entrepreneur Mark," overbroad and unduly burdensome as it is not limited to the United States and is not limited in time, and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving its

CROWELL
& MORING LLP
ATTORNEYS AT LAW

1  objections, EMI will produce documents sufficient to reflect the information

2  provided in EMI's response to Interrogatory 4.

3  **1.    Ariadne's Position**

4      Request Nos. 28 and 30 seek documents sufficient to show Plaintiff's

5  revenues, expenditures, and any net profits or losses associated with the domestic

6  and foreign promotion or provision of products or services under its Entrepreneur

7  mark.  This information is relevant to determining Plaintiff's marketing channels,

8  the weakness of Plaintiff's mark, the lack of overlap in the goods and services

9  involved, the unlikelihood of expansion of the product lines, and any purported

10  damages as well as the relief sought.  *See Rearden*, 683 F.3d at 1198; *e.g.*, *Amstar*

11  *Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 262 (5th Cir. 1980) ("Dissimilarities

12  between the retail outlets for and the predominant consumers of plaintiff's and

13  defendants' goods lessen the possibility of confusion, mistake, or deception."); *id.*

14  ("[D]issimilarities between plaintiff's and defendants' advertising campaigns tend

15  to negate any inference of unfair competition or trademark infringement.").

16  Plaintiff has offered no authority in support of its refusal to produce the requested

17  documents, despite it being Plaintiff's burden to do so.  *Oakes*, 179 F.R.D. at 283.

18      Although Plaintiff claims to have produced "detailed documents showing

19  paid circulation and advertising, including pricing dating back to 2001 through

20  2013," such information is limited to Plaintiff's print magazine.  Plaintiff has not

21  provided information regarding marketing expenses for any other products or

22  services and has only provided limited revenue information for its other printed

23  publications, which it claims to have provided going back to January 2009.

24      In addition, Plaintiff should not be permitted to impose arbitrary date cutoffs

25  on its production, as Ariadne is entitled to discovery of Plaintiff's marketing and

26  revenue figures during the entire period in which Plaintiff has used its Entrepreneur

27  mark in connection with establishing the weakness of Plaintiff's mark, the lack of

28  overlap in the goods, services, and marketing channels, and the unlikelihood of

CROWELL
& MORING LLP
ATTORNEYS AT LAW

PUBLIC REDACTED VERSION     -26-     JOINT STIPULATION ON ARIADNE'S MOTION TO
COMPEL EMI TO PRODUCE DOCUMENTS;
CASE NO. 8:12-cv-02168-CJC-AN

1   expansion of the product lines.  Moreover, Plaintiff has provided no revenues or

2   expenses whatsoever related to its own website or non-print related goods or

3   services, which are more relevant to this dispute, in which Plaintiff has named

4   Ariadne's website—and not any printed publication—as the purportedly infringing

5   instrumentality.[4]  Plaintiff should be required to provide the full scope of documents

6   sought in these Requests.

7                            **2.      EMI's Position**

8         EMI has already produced documents sufficient to show its marketing and

9   revenue numbers dating back to 2009, which should be sufficient given that

10  Ariadne has not shown that it sold any goods or services bearing the

11  EntrepreneurCountry mark prior to June 2008. Wheatley Decl. ¶ 11.  EMI also, in

12  the context of the parties' meet and confer, offered to produce several additional

13  years to the extent available, dating back to 2006 or 2008, the first years Ariadne

14  alleges it conceived of and used the mark EntrepreneurCountry (not an "arbitrary"

15  cut-off).  Ariadne rejected this compromise, and offered no compromise of its own,

16  instead insisting it needs EMI's revenues and marketing expenses dating back to the

17  creation of the Entrepreneur® mark, over thirty years ago.  There is no basis for

18  such an extraordinarily broad request.

19        Documents showing revenue numbers or advertising expenditures dating

20  back to before the existence of Entrepreneur Country are not relevant to any claim

21  or defense in this case.  While Ariadne's revenues are relevant to damages, EMI's

22  revenues and advertising expenditures only possibly go to show the strength of the

23  Entrepreneur® mark.  The strength of the Entrepreneur® mark is only relevant

24  during the period of infringement at issue in this case, and Ariadne's documents

25  show that no revenue was earned using the EntrepreneurCountry mark until June

26  _____

27        [4] In addition to being relevant for all the reasons already described, Plaintiff's
    foreign marketing and revenue figures are additionally relevant as Plaintiff put them
28  at issue in its Complaint. Zambrzycki Decl., Ex. A, Complaint, ¶¶8-9, 13.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

PUBLIC REDACTED VERSION        -27-        JOINT STIPULATION ON ARIADNE'S MOTION TO
COMPEL EMI TO PRODUCE DOCUMENTS;
CASE NO. 8:12-cv-02168-CJC-AN

2008.  Wheatley Decl. ¶ 8. Assuming the truth of Ariadne's repeated statements that it did not conceive of the Entrepreneur Country mark prior to 2006 at the earliest (Dkt. 26 at pg. 3), there could be no likelihood of confusion prior to that date—and thus EMI's revenues prior to that date are not relevant.

Ariadne's statement that "Plaintiff has provided no revenues or expenses whatsoever related to its own website or non-print related goods or services" is flat wrong.  EMI produced exact numbers for its online services and digital subscriptions dating back to 2009. Wheatley Decl. ¶ 11.  EMI also produced spreadsheets separating out and showing total revenues and advertising expenditures for Entrepreneur.com, Entrepreneur magazine, Entrepreneur Press (books), list rental, international licensing of branded products, reprints, and Mexican operations, divided by year. *Id.*  EMI has also produced years of detailed documents showing sales numbers for books, audio guides, advertising and other goods and services dating.  *Id.* ¶ 11. Thus Ariadne's false claims that EMI has not produced data for goods and services other than its print magazine cannot serve as a basis for compelling further production by EMI.

### D.    Request for Production No. 8

**Request for Production No. 8**

All trademark clearance searches done for any mark containing the term "entrepreneur," or any variation thereof, in any country.

**Objection to Request for Production 8**

EMI incorporates by reference each of its General Objections as though fully set forth herein.  EMI objects to this request on the ground that it seeks information protected by the attorney-client privilege and the work product doctrine.  EMI objects to this request as vague as to "or any variation thereof."  This request, which is not limited to the United States, and is not limited in time, seeks information that is not relevant and not reasonably calculated to lead to the discovery of admissible

evidence.

### 1.    Ariadne's Position

Plaintiff has objected to producing its trademark searches for marks containing the term "entrepreneur." But such searches are relevant to establishing the weakness of Plaintiff's mark and the narrow scope, if any, to which it is entitled, as they will demonstrate the multiple uses of the term "entrepreneur" in commerce as well as Plaintiff's knowledge of such widespread use. *E.g.*, *Frehling*, 192 F.3d at 1336 ("Also important in gauging the strength of a mark is the degree to which third parties make use of the mark.").[5] Having failed to meet its burden of demonstrating why such discovery should not be permitted, *Oakes*, 179 F.R.D. at 283, Plaintiff should be compelled to produce documents responsive to this Request.[6]

### 2.    EMI's Position

EMI's trademark clearance searches are not relevant to any claim or defense in this action. Ariadne claims that trademark clearance searches will show third party use. It is wrong. It is well-established that an application or registration for a trademark is not evidence of use. *See* McCarthy on Trademarks and Unfair Competition, Fourth Edition, Section 11:88 ("[I]t is well settled that a trademark search report does not constitute evidence of either the existence of a registration or

---

[5] As with the previous Requests, in addition to being relevant for all the reasons already described, Plaintiff's foreign trademark searches are additionally relevant as Plaintiff put them at issue in its Complaint. Zambrzycki Decl., Ex. A, Complaint, ¶¶8-9, 13.

[6] In correspondence to Ariadne, Plaintiff identified a single case, *Convenient Food Mart, Inc. v. 6-Twelve Convenient Mart, Inc.*, 690 F. Supp. 1457, 1461 n.4 (D. Md. 1988), purportedly in support of its refusal to provide the requested discovery. But in that case, the defendant argued that the asserted mark was generic and the court found that trademark searches were irrelevant to the issue of *genericness*, which "rests upon 'the primary significance of the term in the minds of the consuming public.'" *Id.* That case simply did not involve an assertion, as here, that the asserted mark was in widespread use and therefore merely descriptive and entitled to limited protection, thus making trademark searches relevant to demonstrate that widespread use.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

PUBLIC REDACTED VERSION      -29-      JOINT STIPULATION ON ARIADNE'S MOTION TO
COMPEL EMI TO PRODUCE DOCUMENTS;
CASE NO. 8:12-cv-02168-CJC-AN

of the use of a mark."); *see also Convenient Food Mart, Inc., v. 6-Twelve Convenient Mart, Inc.*, et al., 690 F. Supp. 1457, 1461 n.4 (D.Md. 1988) (noting in relation to motion to compel trademark search that trademark search was not relevant to strength of mark, since it was not relevant to significance of the mark in minds of consuming public).

EMI's trademark clearance searches are also protected by work product and attorney client privilege.  Given that trademark clearance searches will not show third party use, there is no justification for invading EMI's attorney-client and work product privilege and requiring production of these documents.  Given that even current U.S. trademark searches are not relevant, trademark searches from thirty ago, and foreign trademark searches, have no possible bearing on this case. Ariadne's statement that it is entitled foreign trademark searches because EMI referenced (but did not rely on) worldwide use in its Complaint misapprehends the standard for relevance under Rule 26.  A party is not entitled to every document related to every fact alluded to in a pleading—instead a party is entitled to discover "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).  Ariadne's claim that trademark searches in foreign jurisdictions are relevant is particularly puzzling given Ariadne's previous position, as repeatedly expressed in its Motion to Dismiss, that its activities outside of the United States have no relevance to the present action. Dkt. 26. If Ariadne is going to continue to maintain its position that its own foreign activities have no bearing on the present dispute, it is unclear how the activities of unknown third parties could possibly be relevant.[7]

---

[7] Ariadne has separately challenged EMI's marks in Europe but, of course, Ariadne cannot use discovery in this matter to assist its European case.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

JOINT STIPULATION ON ARIADNE'S MOTION TO
COMPEL EMI TO PRODUCE DOCUMENTS;
CASE NO. 8:12-cv-02168-CJC-AN

E.     **Request for Production Nos. 20, 33, 34**

**Request for Production No. 20**

All documents related to any facts, allegations, denials or affirmative defenses in the Complaint, as filed on December 14, 2012, or in Ariadne's Answer to the Complaint, as filed on March 21, 2013.

**Objection to Request for Production 20**

EMI incorporates by reference each of its General Objections as though fully set forth herein.  EMI objects to this request on the ground that it seeks information protected by the attorney-client privilege and the work product doctrine.  EMI objects to this request as vague as to "relating to," and as overbroad and unduly burdensome to the extent it seeks "all" documents related to broad categories, which could capture nearly every document in EMI's possession.

**Request for Production No. 33**

All documents and things that EMI intends to rely upon in this proceeding.

**Objection to Request for Production 33**

EMI incorporates by reference each of its General Objections as though fully set forth herein.  EMI objects to this request on the ground that it is vague and ambiguous and seeks to invade the attorney-client and attorney work product privilege.  Subject to and without waiving its objections, EMI will serve its exhibit list in accordance with the Federal Rules of Civil Procedure and the Local Rules.

**Request for Production No. 34**

All documents relating to EMI's document retention policies.

**Objection to Request for Production 34**

EMI incorporates by reference each of its General Objections as though fully set forth herein.  EMI objects to this request on the ground that it seeks information protected by the attorney-client privilege and the work product doctrine.  EMI objects to this request as vague as to "document retention policies."  EMI objects to

this request as overbroad in that it seeks "all" documents "relating to" EMI's

document retention policies.  EMI has policies to retain documents in compliance

with applicable state and federal laws pertaining to particular classes of documents.

### 1.      Ariadne's Position

Plaintiff has objected to producing documents responsive to Request Nos. 20

and 33, which seek documents that pertain to the facts and allegations contained in

the pleadings, and any documents that Plaintiff intends to rely upon in this

proceeding.  With respect to Request No. 20, Ariadne offered to limit the Request

to only seek responsive documents "not produced in response to any other of

Ariadne's Requests for Production of Documents or Interrogatories to [Plaintiff],"

and further to limit the Request to "all documents related to any facts or allegations

set out in [Plaintiff's] Complaint," but to no avail.  As to Request No. 33, Plaintiff

expressed its concern with the term "*intends* to rely" (despite Ariadne's assurances

that it is not seeking Plaintiff's attorneys' mental impressions or other potentially

privileged material), but has not suggested a compromise.   Thus, Plaintiff refuses

to produce documents responsive to these Requests even though Ariadne is plainly

entitled to discovery of all information tending to prove or disprove any of the

claims and defenses at issue in this case that are in Plaintiff's custody, possession,

or control, which is precisely what these Requests seek.  *See* Fed. R. Civ. P. 16;

26(a)(1), (b)(1); 34(a).

Separately, Plaintiff refuses to produce its document retention policies in

response to Request No. 34, which Ariadne has offered to limit to seek "all

documents setting out any document retention policies, guidelines, or procedures."

Ariadne has also clarified that it does not seek any materials protected by the

attorney client or any other applicable privilege, but rather documents maintained in

the regular course of Plaintiff's business.  Plaintiff admits that it maintains "policies

to retain documents in compliance with applicable state and federal laws pertaining

to particular classes of documents" and has failed to offer any basis for its refusal to

CROWELL
& MORING LLP
ATTORNEYS AT LAW

JOINT STIPULATION ON ARIADNE'S MOTION TO
COMPEL EMI TO PRODUCE DOCUMENTS;
CASE NO. 8:12-cv-02168-CJC-AN

1  produce them.  These policies have become increasingly relevant in view of

2  Plaintiff's deficient and scattershot production, as described herein.

3       Once again, Plaintiff has offered no authority in support of its refusal to

4  produce documents responsive to these Requests, despite having the burden to do

5  so, *Oakes*, 179 F.R.D. at 283, and should be required to produce the full scope of

6  discovery requested.

7              **2.      EMI's Position**

8  Document Request 20

9       Defendant's request for "all documents related to any facts, allegations,

10  denials or affirmative  defenses" in the Complaint or Answer is plainly improper, as

11  it does not specify a recognizable category of documents.  If requests such as this

12  one were permissible, then written discovery would always consist of a single

13  request—a party could simply demand that opposing counsel turn over every

14  document related to any fact, allegation, denial or defense, and all possibly relevant

15  documents (and a large number of non-relevant ones) would be produced.  Of

16  course, this is improper and is contrary to Rule 34.

17       A party propounding discovery is required to specify with reasonable

18  particularity the categories of documents it is seeking.  *Regan-Touhy v. Walgreen*

19  *Co.*, 526 F.3d 641, 649 (10th Cir. Okla. 2008) (holding that with discovery

20  "privileges come certain modest obligations, one of which is the duty to state

21  discovery requests with 'reasonable particularity.'") (citing Fed. R. Civ. P.

22  34(b)(1)(A)).  Reasonable particularity means that "a discovery request should be

23  sufficiently definite and limited in scope that it can be said 'to apprise a person of

24  ordinary intelligence what documents are required and [to enable] the court . . . to

25  ascertain whether the requested documents have been produced.'" *Id.* at 649-50.

26  Based on this standard, courts routinely reject "kitchen sink" requests such as

27  Request 20.  *See id.* (refusing to compel production in response to request for "all

28  documents . . . that refer to, mention or relate in any way to Plaintiff, Whitlock, or

CROWELL
& MORING LLP
ATTORNEYS AT LAW

PUBLIC REDACTED VERSION     -33-     JOINT STIPULATION ON ARIADNE'S MOTION TO
COMPEL EMI TO PRODUCE DOCUMENTS;
CASE NO. 8:12-cv-02168-CJC-AN

1   the litigation or the allegations, facts and circumstances concerning the litigation").

2   This Court should similarly refuse to compel that EMI produce documents in

3   response to Request 20.  Indeed, the complaint includes numerous "facts" and

4   "allegations" regarding basic, background issues (including the parties' location

5   and general businesses) and it would be virtually impossible for EMI to produce

6   every document "related" to each such fact and allegation.

7   Request 33

8        Request 33 for all documents and things that EMI intends to rely upon in this

9   proceeding also attempts to do an end-run around the reasonable particularity

10  requirement, and further attempts to invade EMI's protected work product. EMI has

11  already stated repeatedly in its meet and confers with Ariadne's counsel that it will

12  produce all documents that it will use at trial.  But documents on which EMI

13  "intends to rely" is a nebulous concept, is not a fixed category of documents, and

14  explicitly seeks to uncover EMI's trial strategy prior to the applicable disclosure

15  deadlines.

16       Rather than specifying with reasonable particularity the categories of

17  documents Ariadne seeks, Ariadne would like a set of documents that EMI

18  currently believes it will use at trial in November.  This would necessarily invade

19  EMI's work product privilege, since it is asking EMI's counsel to sort through the

20  documents in this case and identify which specific documents it "intends" to use in

21  the future.  Additionally, it is unclear how EMI could even comply with this plainly

22  improper request, as EMI's strategy is constantly being refined which, accordingly,

23  changes the documents that EMI's counsel "intends to rely" upon at trial.

24       The proper time for disclosure of trial exhibits is governed by the Court's

25  Scheduling Order, the Federal Rules of Civil Procedure, and the Local Rules.

26  Ariadne is not entitled to that trial exhibit list now.

27  Request 34

28       Ariadne's request for all "document retention policies, procedures and

CROWELL
& MORING LLP
ATTORNEYS AT LAW

PUBLIC REDACTED VERSION        -34-

JOINT STIPULATION ON ARIADNE'S MOTION TO
COMPEL EMI TO PRODUCE DOCUMENTS;
CASE NO. 8:12-cv-02168-CJC-AN

guidelines" seeks a large category of non-responsive documents that have no bearing on this case.  As EMI explained on several occasions to Ariadne's counsel, EMI, like all businesses, complies with a variety of local, state and federal laws that require document retention. Young Decl. ¶ 10.  Tax records and personnel records are just a few of the categories of documents that EMI must retain for specified periods and/or in a specified manner.  Obviously, such policies have no bearing on the present trademark dispute.  Ariadne has provided no authority to support its request for these policies, nor has it alleged any facts which suggest that document retention is at issue in this case.  Despite EMI's suggestion, Ariadne refused to narrow its request to avoid capturing irrelevant information.  EMI should not be compelled to produce non-relevant document retention policies.

**F.    Request for Production Nos. 1, 3, 5, 13, 15-19, 27, 31-32, 35-39 and Interrogatory Nos. 4 and 5**

**Request for Production No. 1**

All documents concerning Ariadne, EntrepreneurCountry, or the EntrepreneurCountry Mark.

**Objection to Request for Production 1**

EMI incorporates by reference each of its General Objections as though fully set forth herein.  EMI objects to this request on the ground that it seeks information protected by the attorney-client privilege and the work product doctrine.  Subject to and without waiving its objections, EMI will produce non-privileged documents responsive to this request.

**Request for Production No. 3**

All business plans and mission or policy statements for EMI and/or Entrepreneur Magazine.

**Objection to Request for Production 3**

EMI incorporates by reference each of its General Objections as though fully set forth herein.  EMI objects to this request as vague as to "business plans and

CROWELL
& MORING LLP
ATTORNEYS AT LAW

PUBLIC REDACTED VERSION        -35-        JOINT STIPULATION ON ARIADNE'S MOTION TO
COMPEL EMI TO PRODUCE DOCUMENTS;
CASE NO. 8:12-cv-02168-CJC-AN

1  mission or policy statements," overbroad, unduly burdensome and not reasonably

2  calculated to lead to the discovery of admissible evidence.  Subject to and without

3  waiving its objections, to the extent they exist, EMI will produce current business

4  plans and mission statements for EMI.

5  **Request for Production No. 5**

6  The first twelve issues of Entrepreneur Magazine, the most recent 24 issues

7  of Entrepreneur Magazine, and the first issue of the magazine for each intervening

8  calendar year.

9  **Objection to Request for Production 5**

10  EMI incorporates by reference each of its General Objections as though fully

11  set forth herein.  EMI objects to this request as not relevant, overbroad and unduly

12  burdensome, and not reasonably calculated to lead to the discovery of admissible

13  evidence.  Subject to and without waiving its objections, EMI will produce the most

14  recent issue of Entrepreneur Magazine, and back issues are publicly available for

15  purchase.

16  **Request for Production No. 13**

17  All documents reflecting or pertaining to any alleged evidence of confusion

18  on the part of any person between (a) any goods and services offered by EMI, and

19  (b) any goods or services offered by Ariadne.

20  **Objection to Request for Production 13**

21  EMI incorporates by reference each of its General Objections as though fully

22  set forth herein.  Subject to and without waiving its objections, EMI will produce

23  the requested non-privileged documents.

24  **Request for Production No. 15**

25  All documents relating to any damages or injury allegedly suffered by EMI

26  as a result of conduct alleged in the Complaint.

27  **Objection to Request for Production 15**

28  EMI incorporates by reference each of its General Objections as though fully

CROWELL
& MORING LLP
ATTORNEYS AT LAW

PUBLIC REDACTED VERSION        -36-        JOINT STIPULATION ON ARIADNE'S MOTION TO
COMPEL EMI TO PRODUCE DOCUMENTS;
CASE NO. 8:12-cv-02168-CJC-AN

1   setforth herein.  EMI objects to this request on the ground that it seeks information

2   protected by the attorney-client privilege and the work product doctrine.  Subject to

3   and without waiving its objections, EMI will produce the requested non-privileged

4   documents.

5           **Request for Production No. 16**

6         All documents identified in EMI's Rule 26(a)(1) disclosures.

7          **Objection to Request for Production 16**

8         EMI incorporates by reference each of its General Objections as though fully

9   set forth herein.  EMI objects to this request as overbroad and unduly burdensome

10  to the extent it seeks "all" documents, and not reasonably calculated to lead to the

11  discovery of admissible evidence.  Subject to and without waiving its objections,

12  EMI will produce the requested documents.

13        **Request for Production No. 17**

14       All documents identified, either individually or generally, in EMI's responses

15  to Ariadne's First Set of Interrogatories.

16        **Objection to Request for Production 17**

17       EMI incorporates by reference each of its General Objections as though fully

18  set forth herein.  EMI objects to this request on the ground that it seeks information

19  protected by the attorney-client privilege and the work product doctrine.  Subject to

20  and without waiving its objections, EMI will produce documents identified in

21  EMI's responses to Ariadne's First Set of Interrogatories.

22        **Request for Production No. 18**

23       All documents reviewed or relied upon by EMI in responding to Ariadne's

24  First Set of Interrogatories or First Set of Requests for Admission.

25        **Objection to Request for Production 18**

26       EMI incorporates by reference each of its General Objections as though fully

27  set forth herein.  EMI objects to this request on the ground that it seeks information

28  protected by the attorney-client privilege and the work product doctrine.  Subject to

CROWELL
& MORING LLP
ATTORNEYS AT LAW

PUBLIC REDACTED VERSION    -37-    JOINT STIPULATION ON ARIADNE'S MOTION TO
COMPEL EMI TO PRODUCE DOCUMENTS;
CASE NO. 8:12-cv-02168-CJC-AN

1    and without waiving its objections, EMI will produce non-privileged documents

2    reviewed or relied upon by EMI in responding to Ariadne's First Set of

3    Interrogatories or First Set of Requests for Admission.

4            **Request for Production No. 19**

5            All documents relating to or supporting any denial of any of the requests in

6    Ariadne's First Set of Requests for Admission.

7            **Objection to Request for Production 19**

8            EMI incorporates by reference each of its General Objections as though fully

9    set forth herein.  EMI objects to this request on the ground that it seeks information

10   protected by the attorney-client privilege and the work product doctrine.  EMI

11   objects to this request as vague as to "relating to" and "supporting," and as

12   overbroad and unduly burdensome to the extent it seeks "all" documents.  Subject

13   to and without waiving its objections, EMI will produce non-privileged documents

14   supporting denial of any of the requests in Ariadne's First Set of Requests for

15   Admission.

16           **Request for Production No. 27**

17           Documents sufficient to show, by year and country the promotion,

18   marketing, advertising, or provision of each and every product or service using the

19   Entrepreneur Mark or any variation thereof, other than Entrepreneur Magazine.

20           **Objection to Request for Production 27**

21           EMI incorporates by reference each of its General Objections as though fully

22   set forth herein.  EMI objects to this request on the ground that it seeks information

23   protected by the attorney-client privilege and the work product doctrine.  EMI

24   objects to this request as vague as to "provision" and "any variation thereof," not

25   relevant, overbroad and unduly burdensome to the extent it seeks documents

26   sufficient to show "each and every product or service," and seeks documents

27   outside of the United States, and not reasonably calculated to lead to the discovery

28   of admissible evidence.  Subject to and without waiving its objections, EMI will

CROWELL
& MORING LLP
ATTORNEYS AT LAW

PUBLIC REDACTED VERSION        -38-        JOINT STIPULATION ON ARIADNE'S MOTION TO
COMPEL EMI TO PRODUCE DOCUMENTS;
CASE NO. 8:12-cv-02168-CJC-AN

1   produce samples of documents showing the promotion, marketing, and advertising
2   of products or services using the Entrepreneur Mark in the United States.

3   **Request for Production No. 31**

4       All documents that relate or refer to the types of individuals or entities, or the
5   classes of consumers or entities, who purchase EMI's goods or services offered
6   under the Entrepreneur Mark.

7   **Objection to Request for Production 31**

8       EMI incorporates by reference each of its General Objections as though fully
9   set forth herein.  EMI objects to this request on the ground that it seeks information
10  protected by the attorney-client privilege and the work product doctrine.  EMI
11  objects to this request as vague as to "types" and "classes," overbroad and unduly
12  burdensome, and is not limited to the United States and is not limited in time, and is
13  not reasonably calculated to lead to the discovery of admissible evidence.  Subject
14  to and without waiving its objections, EMI will produce documents sufficient to
15  show the types of individuals or entities who currently purchase EMI's goods or
16  services offered under the Entrepreneur Mark, to the extent such documents exist.

17  **Request for Production No. 32**

18      All documents that relate or refer to the manner in which EMI markets,
19  promotes, sells, or distributes goods or services under the Entrepreneur Mark.

20  **Objection to Request for Production 32**

21      EMI incorporates by reference each of its General Objections as though fully
22  set forth herein.  EMI objects to this request on the ground that it seeks information
23  protected by the attorney-client privilege and the work product doctrine.  EMI
24  objects to this request as vague as to "manner", not relevant, overbroad and unduly
25  burdensome, and not reasonably calculated to lead to the discovery of admissible
26  evidence.  Subject to and without waiving its objections, EMI will produce samples
27  of documents showing the promotion, marketing, and advertising of products or
28  services using the Entrepreneur Mark in the United States.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

PUBLIC REDACTED VERSION      -39-      JOINT STIPULATION ON ARIADNE'S MOTION TO
COMPEL EMI TO PRODUCE DOCUMENTS;
CASE NO. 8:12-cv-02168-CJC-AN

1   **Request for Production No. 35**

2       All documents relating to EMI's contention in paragraph 2 of the Complaint

3   that "[t]he Defendants, through their Internet presence, conduct business within the

4   State of California and this District and provide services into the State of California

5   and this District."

6       **Objection to Request for Production 35**

7       EMI incorporates by reference each of its General Objections as though fully

8   set forth herein.  EMI objects to this request on the ground that it seeks information

9   protected by the attorney-client privilege and the work product doctrine.  EMI

10  objects to this request as this information is in the possession of Defendant, and

11  more readily available to the Defendant than to EMI.  Subject to and without

12  waiving its objections, EMI will produce non-privileged responsive documents.

13      **Request for Production No. 36**

14      All documents relating to EMI's contention in paragraph 3 of the Complaint

15  that "[the defendants] transact business within the State of California and this

16  District."

17      **Objection to Request for Production 36**

18      EMI incorporates by reference each of its General Objections as though fully

19  set forth herein.  EMI objects to this request on the ground that it seeks information

20  protected by the attorney-client privilege and the work product doctrine.  EMI

21  objects to this request as this information is in the possession of Defendant, and

22  more readily available to the Defendant than to EMI.  Subject to and without

23  waiving its objections, EMI will produce non-privileged responsive documents.

24      **Request for Production No. 37**

25      All documents relating to EMI's contention in paragraph 3 of the Complaint

26  that "[the defendants] have committed the tortious acts specified herein with the

27  State of California and this District."

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

PUBLIC REDACTED VERSION        -40-        JOINT STIPULATION ON ARIADNE'S MOTION TO
COMPEL EMI TO PRODUCE DOCUMENTS;
CASE NO. 8:12-cv-02168-CJC-AN

1

### Objection to Request for Production 37

2    EMI incorporates by reference each of its General Objections as though fully

3 set forth herein.  EMI objects to this request on the ground that it seeks information

4 protected by the attorney-client privilege and the work product doctrine.  EMI

5 objects to this request as vague as to "relating", overbroad and unduly burdensome

6 to the extent it seeks "all" documents.  EMI objects to this request as this

7 information is in the possession of Defendant, and more readily available to the

8 Defendant than to EMI.  Subject to and without waiving its objections, EMI will

9 produce non-privileged responsive documents.

10

### Request for Production No. 38

11    All documents relating to EMI's contention in paragraph 3 of the Complaint

12 that "[the defendants] have committed tortious acts within the State of California

13 causing injury to persons or property within the State of California and this

14 District."

15

### Objection to Request for Production 38

16    EMI incorporates by reference each of its General Objections as though fully

17 set forth herein.  EMI objects to this request on the ground that it seeks information

18 protected by the attorney-client privilege and the work product doctrine.  EMI

19 objects to this request as vague as to "relating", overbroad and unduly burdensome

20 to the extent it seeks "all" documents.  EMI objects to this request as this

21 information is in the possession of Defendant, and more readily available to the

22 Defendant than to EMI. Subject to and without waiving its objections, EMI will

23 produce non-privileged responsive documents.

24

### Request for Production No. 39

25    All documents relating to EMI's contention in paragraph 3 of the Complaint

26 that "[the defendants] have purposefully availed themselves of the privilege of

27 doing business within the State of California."

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

PUBLIC REDACTED VERSION          -41-

JOINT STIPULATION ON ARIADNE'S MOTION TO
COMPEL EMI TO PRODUCE DOCUMENTS;
CASE NO. 8:12-cv-02168-CJC-AN

1

**Objection to Request for Production 39**

2    EMI incorporates by reference each of its General Objections as though fully

3 set forth herein.  EMI objects to this request on the ground that it seeks information

4 protected by the attorney-client privilege and the work product doctrine.  EMI

5 objects to this request as vague as to "relating", overbroad and unduly burdensome

6 to the extent it seeks "all" documents.  EMI objects to this request as this

7 information is in the possession of Defendant, and more readily available to the

8 Defendant than to EMI. Subject to and without waiving its objections, EMI will

9 produce non-privileged responsive documents.

10

**Interrogatory No. 4**

11    Identify separately as to each Entrepreneur Good and Service identified in

12 response to Interrogatory No. 2, any and all past, present and future planned

13 advertising, marketing and/or other promotional activities, including the costs

14 associated with each activity, carried on by Plaintiff in connection with

15 Entrepreneur Goods and Services or the Entrepreneur Mark.

16

**CONFIDENTIAL Response to Interrogatory No. 4**

17    EMI incorporates by reference each of its General Objections as though fully

18 set forth herein.  EMI objects to this interrogatory on the ground that it seeks

19 information protected by the attorney-client privilege and the work product

20 doctrine.  EMI objects to this request as vague, not relevant, overbroad and unduly

21 burdensome to the extent it seeks "all" past, present and future planned advertising,

22 and not reasonably calculated to lead to the discovery of admissible evidence.  EMI

23 objects to this interrogatory as compound and counts as 15 separate interrogatories.

24 Subject to and without waiving its objections, EMI responds that pursuant to

25 Federal Rule of Civil Procedure 33(d) it will produce documents sufficient to show

26 representative samples of EMI's advertising and promotional activities.  EMI

27 further responds that its annual advertising expenditures from 2011 through 2013

28 were as follows:

CROWELL
& MORING LLP
ATTORNEYS AT LAW

PUBLIC REDACTED VERSION      -42-

JOINT STIPULATION ON ARIADNE'S MOTION TO
COMPEL EMI TO PRODUCE DOCUMENTS;
CASE NO. 8:12-cv-02168-CJC-AN

███████████████████████████████████████

███████████████████████████████████████

██████████████

**Interrogatory No. 5**

Identify any and all communications with persons or entities not a party to this lawsuit concerning Ariadne, EntrepreneurCountry, or the EntrepreneurCountry Mark, including communications concerning the www.entrepreneurcountry.com web site.

**Response to Interrogatory No. 5**

EMI incorporates by reference each of its General Objections as though fully set forth herein.  EMI objects to this interrogatory on the ground that it seeks information protected by the attorney-client privilege and the work product doctrine.  EMI objects to this request as not relevant, overbroad and unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving its objections, EMI responds that to the extent such communications exist, and they are in the possession, custody and control of EMI, EMI will produce responsive non-privileged communications pursuant to document requests and Rule 33(d).

## 1.    Ariadne's Position

In addition to its refusal to produce documents in response to Ariadne's discovery requests as set forth in Sections III.A.- E., *supra*, Plaintiff has also failed to produce the documents that it agreed to produce in response to Ariadne's Request Nos. 1, 3, 5, 13,15-19, 27, 31-32, 35-39, and in connection with Interrogatory Nos. 4 and 5.  Plaintiff has suggested that it has produced all the requested documents and that before it can produce any additional documents, it is Ariadne's burden to identify "specific documents" that EMI has failed to produce.  But there is of course no way for Ariadne to know what specific responsive documents are in Plaintiff's possession, custody and control.  What is clear,

CROWELL
& MORING LLP
ATTORNEYS AT LAW

PUBLIC REDACTED VERSION        -43-        JOINT STIPULATION ON ARIADNE'S MOTION TO
COMPEL EMI TO PRODUCE DOCUMENTS;
CASE NO. 8:12-cv-02168-CJC-AN

however, is that Plaintiff's production is deficient on its face.

As an initial matter, to date, Plaintiff has produced **a total of approximately 250 documents** in response to Ariadne's discovery requests.  Zambrzycki Decl., ¶11.  Moreover, **more than half of this already limited production consists entirely of**:

- communications with the United States Patent and Trademark Office ("PTO") regarding Plaintiff's trademark registrations (approximately 65 documents—i.e., 25% of the entire production);
- circulation numbers for Plaintiff's "Entrepreneur" magazine (approximately 35 documents);
- covers of Plaintiff's "Entrepreneur" magazine (approximately 24 documents); and
- web printouts from 2012 and 2014, rather than documents kept in the normal course of Plaintiff's business (approximately 16 documents). Zambrzycki Decl., ¶12.

Plaintiff can hardly claim that the remaining 100+ documents that it has produced can possibly cover several years' worth of documents responsive to these Requests and Interrogatories, which encompass documents concerning Plaintiff's advertising, marketing, and promotional activities under the Entrepreneur mark, and the costs associated therewith; Plaintiff's provisions of goods and services under the Entrepreneur mark; Plaintiff's documents, including communications, regarding Ariadne, EntrepreneurCountry, the EntrepreneurCountry Mark, and EntrepreneurCountry website; Plaintiff's business plans; Plaintiff's communications regarding the Entrepreneur mark or related goods and services; copies of Plaintiff's Entrepreneur magazine; Plaintiff's evidence reflecting or pertaining to any alleged evidence of confusion regarding EMI's and Ariadne's goods and/or services; Plaintiff's evidence pertaining to any alleged damages or injury; documents concerning Plaintiff's trademark licensing; documents

CROWELL & MORING LLP
ATTORNEYS AT LAW

PUBLIC REDACTED VERSION          -44-

JOINT STIPULATION ON ARIADNE'S MOTION TO
COMPEL EMI TO PRODUCE DOCUMENTS;
CASE NO. 8:12-cv-02168-CJC-AN

concerning Plaintiff's trademark enforcement; Plaintiff's invoices;[8] Plaintiff's documents relied on in answering Ariadne's discovery requests; Plaintiff's documents regarding consumers of its goods and services under the Entrepreneur mark; Plaintiff's documents regarding its marketing and promotional channels; and Plaintiff's documents supporting its allegations that Ariadne conducts business or has committed tortious acts within California.

Notably, other than four heavily redacted e-mails dated in April 2014, Plaintiff's production is **entirely devoid of any communications**. Zambrzycki Decl., ¶13. Its production **also completely lacks** any business plans, invoices, trademark licensing information, trademark enforcement information, evidence of confusion, or evidence of damages. *Id.*, ¶14. Moreover, because the number of these 100+ remaining documents produced by Plaintiff—which include, *inter alia*, a few articles from its website, a few articles regarding the Entrepreneur magazine, and a few samples of Plaintiffs' advertisements—is so low, these documents must have been either produced at random or, worse, cherry-picked for production. Indeed, Plaintiff has produced no more than a handful of documents from each of the years 2000-2006 and 2011, with the majority of its production appearing to come from 2007-2010, and mostly from 2010. *Id.*, ¶15.

Accordingly, Plaintiff should be compelled to supplement its production by producing all documents in its custody, possession, or control responsive to the above Requests and in connection with the above Interrogatories.

### 2.      EMI's Position

Without any evidentiary support, Ariadne asserts that EMI is withholding documents. Yet Ariadne cannot identify any specific documents that EMI should

---

[8] Plaintiff itself identified "[d]ocuments relating to … trademark licensing and trademark enforcement" as well as "invoices" as relevant to this case in its Initial Disclosures, despite its failure—and refusal—to produce any of this information. Zambrzycki Decl., Ex. B at 2.

CROWELL & MORING LLP
ATTORNEYS AT LAW

PUBLIC REDACTED VERSION          -45-          JOINT STIPULATION ON ARIADNE'S MOTION TO
COMPEL EMI TO PRODUCE DOCUMENTS;
CASE NO. 8:12-cv-02168-CJC-AN

have, and yet has not, produced.  Instead, Ariadne grossly mischaracterizes EMI's production and ignores that fact that the requested documents in many cases either do not exist, or are not under the control of EMI.  And, failing to acknowledge that its own production consisted of only approximately 125 documents, Ariadne cries that EMI's production must be lacking because EMI has produced "approximately 250 documents."

EMI's production was not "cherry-picked" and Ariadne cites no evidence to support that allegation.  It is unclear what would be the proper number of documents for a Plaintiff to produce in a straight-forward trademark infringement case, and Ariadne provides no explanation as to which aspect of EMI's production would be expected to consist of large numbers of documents.  EMI produced over 1600 pages of documents.  Much of the relevant evidence in this case is in the hands of Ariadne, not EMI.  Yet Ariadne's production of approximately 125 documents was only 1312 pages and largely consisted of programs or brochures for its events.

For many of Ariadne's requests, no or very few responsive documents exist.  For example, EMI has no reason to have documents on Ariadne, and thus excepting cease and desist correspondence with Ariadne, and screenshots obtained in support of that correspondence and the Complaint (which were produced), EMI does not possess any records.  Documents relating to damages are under the control of Ariadne, not EMI, and thus EMI has no documents to produce prior to the expert disclosure deadline.  As in the vast majority of trademark cases, instances of actual confusion are very difficult to prove, and generally are not contained in documents, and thus there are few if any documents for EMI to produce in response to that request.  *Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc.*, 457 F.3d 1062, 1075 (9th Cir. 2006)  ("[A]ctual confusion is hard to prove; difficulties in gathering evidence of actual confusion make its absence generally unnoteworthy.").

CROWELL
& MORING LLP
ATTORNEYS AT LAW

PUBLIC REDACTED VERSION          -46-

JOINT STIPULATION ON ARIADNE'S MOTION TO
COMPEL EMI TO PRODUCE DOCUMENTS;
CASE NO. 8:12-cv-02168-CJC-AN

1
2
3      EMI has provided representative samples of

4 magazine covers, an issue of the magazine, screenshots from the website, and other

5 documents listing and showing other types of goods and services EMI provides.

6 Wheatley Decl. ¶ 10.  It is unclear what additional documents EMI could provide

7 that are not merely cumulative.

8      EMI has also produced documents showing the characteristics of its

9 customers, such as demographic and other data, obtained through market research.

10 Wheatley Decl. ¶ 9. This is also not a category of documents which is voluminous –

11 EMI does not conduct the same market studies over and over, and EMI provided

12 such documents for a reasonable time period, *i.e.* the period of infringement at issue

13 here.  EMI's evidence of Ariadne's activities in California derives from the

14 documents attached to the Complaint (which were produced) and Ariadne's own

15 documents and testimony. *Id.* ¶ 13.  Similarly, EMI has in fact produced all

16 documents identified in its Rule 26 disclosures, and all documents identified or

17 relied upon in responding to Interrogatories or Requests for Admission—again

18 neither request implicated a significant number of documents.

19      Ariadne has not provided any justification for its claim that EMI's production

20 is deficient beyond speculating that EMI "should" have produced more documents

21 (a theory that does not make sense given the substance of Ariadne's requests).

22 Ariadne has also failed identify any specific gaps in EMI's production.  Ariadne's

23 claim that no communications were produced is factually inaccurate, and not

24 relevant as Ariadne has not pointed to any evidence or specific requests that show

25 that EMI is withholding relevant communications. Wheatley Decl. ¶ 12 (identifying

26 communications).  Despite the lack of support for Ariadne's claims, EMI has

27 nonetheless gone through the cited requests and reconfirmed that relevant, non-

28 privileged documents were produced, as discussed below.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

PUBLIC REDACTED VERSION        -47-

JOINT STIPULATION ON ARIADNE'S MOTION TO
COMPEL EMI TO PRODUCE DOCUMENTS;
CASE NO. 8:12-cv-02168-CJC-AN

Request for Production 1

EMI reviewed its records for documents responsive to this request, and has produced all non-privileged documents relating to Ariadne, EntrepreneurCountry, or the EntrepreneurCountry Mark which were located after a reasonable search. Young Decl. ¶ 3.

Request for Production 3

EMI reviewed its records and produced any current business plans or mission or policy statements for EMI to the extent they exist. *Id.* ¶ 4.

Request for Production 5

EMI has produced a representative issue of *Entrepreneur* magazine in its entirety.  Ariadne's request for an additional 50 plus separate issues is overbroad and unduly burdensome.  Further, Ariadne has provided no explanation as to why it needs 50+ separate issues of *Entrepreneur* magazine dating back thirty years.  To the extent Ariadne wants additional copies of *Entrepreneur* magazine, back issues are available for purchase on EMI's website.  The cost to Ariadne of purchasing the back issues it wants will be less than or equal to the cost to EMI of attempting to locate and produce those issues. *Id.* ¶ 5.

Request for Production 13

EMI reviewed its records and has produced any documents showing actual confusion which it located after a reasonable search.  *Id.* ¶ 6.

Request for Production 15

Documents relevant to damages suffered by EMI, such as documents relating to Ariadne's profits, are under the control of Ariadne, and not EMI.  To the extent EMI relies on an expert to determine damages, EMI will disclose any non-privileged expert reports in accordance with the Federal and Local Rules. *Id.* ¶ 7.

Request for Production 16

EMI has produced any documents identified in its Rule 26 disclosures. *Id.* ¶ 8.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

PUBLIC REDACTED VERSION        -48-

JOINT STIPULATION ON ARIADNE'S MOTION TO
COMPEL EMI TO PRODUCE DOCUMENTS;
CASE NO. 8:12-cv-02168-CJC-AN

<u>Requests 17-19</u>

EMI has produced any documents identified in or relied upon in response to Ariadne's Interrogatories or Requests for Admission. *Id.*¶ 8.

<u>Request for Production 27</u>

████████████████████████████████████

████████████████████████████████

███████████████████████████

<u>Request for Production 31</u>

EMI has produced documents sufficient to show the types of individuals or entities who currently purchase EMI's goods and services. Wheatley Decl. ¶ 9.

<u>Request for Production 32</u>

EMI has produced samples of documents showing the promotion, marketing and advertising of EMI's products and services bearing the Entrepreneur® mark in the United States. *Id.* ¶ 9; Young Decl. ¶ 9.

<u>Requests for Productions 35-39</u>

EMI has produced documents which show that the Defendants transact business and committed tortious acts causing injury within the state of California. Wheatley Decl. ¶ 13. Indeed, Ariadne filed a motion to dismiss claiming that it does not do business in the United States, to which EMI responded with evidence. Ariadne's motion was denied. Dkt. 44.

<u>Interrogatory 4</u>

EMI produced documents detailing its advertising and marketing expenditures by specific good or services. EMI also produced samples of its promotional activities. EMI has agreed to identify responsive documents pursuant to Fed. R. Civ. P. 33(d). Young Decl. ¶ 9; Wheatley Decl. ¶¶ 10-11.

<u>Interrogatory 5</u>

EMI has not identified any non-privileged communications which are responsive to Interrogatory 5, and to its knowledge, no such non-privileged

CROWELL
& MORING LLP
ATTORNEYS AT LAW

PUBLIC REDACTED VERSION         -49-

JOINT STIPULATION ON ARIADNE'S MOTION TO
COMPEL EMI TO PRODUCE DOCUMENTS;
CASE NO. 8:12-cv-02168-CJC-AN

1   communications exist. Young Decl. ¶ 11.

2   **IV.   Ariadne's Conclusion**

3        Plaintiff's approximately 250 document production is deficient on its face

4   and its objections to the Requests and Interrogatories identified above are baseless.

5   Accordingly, Plaintiff should be ordered to supplement its production and produce

6   all of the documents requested in Ariadne's Request Nos. 1, 3, 5, 7, 8, 10-39 and in

7   connection with Interrogatory Nos. 4, 5, and 23.

8   **V.   EMI's Conclusion**

9        EMI's document production is complete and is reasonable, given the

10  documents requested and the claims at issue in this case.  The majority of Ariadne's

11  requests seek non-relevant documents, or seek to require EMI's attorneys to reveal

12  their mental impressions so that Ariadne can free-ride off of that analysis.  Ariadne

13  has not cited any authority in support of its requests, and in fact the plain language

14  of Rule 26 and available case law indicate that many of Ariadne's requests are

15  improper.  Furthermore, many of the documents sought by Ariadne are publicly

16  available, and equally accessible to the Defendants.

17       Given that Ariadne did not comply with Rule 37 and has (1) failed to link its

18  requests to claims and defenses in this case, (2) failed to show good cause for a

19  broader "subject matter" inquiry, and (3) failed to show any evidence that EMI has

20  not produced documents it agreed to produce, Ariadne's motion should be denied in

21  its entirety.

22

23

24

25

26

27

28

CROWELL & MORING LLP
ATTORNEYS AT LAW

PUBLIC REDACTED VERSION       -50-       JOINT STIPULATION ON ARIADNE'S MOTION TO
COMPEL EMI TO PRODUCE DOCUMENTS;
CASE NO. 8:12-cv-02168-CJC-AN

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

*/s/ Mark A. Finkelstein*
MARK A. FINKELSTEIN (173851)
mafinkelstein@jonesday.com
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA  92612
Telephone:   (949) 851-3939
Facsimile:    (949) 553-7539

LUCY J. WHEATLEY (*pro hac vice*)
lwheatley@jonesday.com
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Telephone:   (202) 879-3602
Facsimile:    (202) 626-1700

Attorneys for Plaintiff
ENTREPRENEUR MEDIA, INC.

Dated: June 26, 2014

*Jacob Z. Zambrzycki*
MARK T. JANSEN (114896)
mjansen@crowell.com
JANINE L. SCANCARELLI (197202)
jscancarelli@crowell.com
JACOB Z. ZAMBRZYCKI (289682)
jzambrzycki@crowell.com
CROWELL & MORING LLP
275 Battery Street, 23rd Floor
San Francisco, CA  94111
Telephone: (415) 986-2800
Facsimile: (415) 986-2827

Attorneys for Defendant
ARIADNE CAPITAL LIMITED

Dated: June 26, 2014

CROWELL
& MORING LLP
ATTORNEYS AT LAW

PUBLIC REDACTED VERSION          -51-